UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LARRY L. WALKER and )
CYNTHIA WALKER, )
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　)
v. ) No. 3:07-CV-377
) (VARLAN/SHIRLEY)
LOUISVILLE LADDER, INC., )
)
　　　　Defendant. )

## MEMORANDUM AND ORDER

　　　　This civil action is before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 20] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the defendant's Motion to Exclude Opinion Testimony. [Doc. 16] On January 13, 2009, and January 23, 2009, the Court conducted hearings on the instant motion. After the hearings, the Court took the motion under advisement and it is now ripe for adjudication.

　　　　The defendant, pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993), and its progeny, moves the Court to exclude the testimony of the plaintiff's engineering expert, Stanley Kiska ("Mr. Kiska"). As grounds, the defendant states that Mr. Kiska's testimony is not based upon sufficient facts or data, is not based upon a reliable methodology, and that Mr. Kiska's theory has not been properly applied to the facts of the case. The plaintiff disagrees, arguing that Mr. Kiska's testimony satisfies <u>Daubert</u> and is admissible.

## I. Relevant Facts

On April 12, 2007, plaintiff Larry Walker ("Mr. Walker") was injured when he fell from a ladder manufactured by defendant Louisville Ladder, Inc. ("Louisville Ladder"). Specifically, at his deposition of March 12, 2008, Mr. Walker described the incident as follows:

> Well, Jessica come and told me she thought some of the kids had tobacco or dope or something hid in the ceiling. There was too much activity going on in the bathroom. She asked me if I would come up there and look and see. I told her, yeah, I said now that they are down there at the lunch room eating lunch and nobody in there. I said you will be there, ain't you. She said yeah. So I just got the ladder and we walked up the hall together.
>
> The bathroom doors are on automatic shutters. Well, she was standing the holding the door for me. I just set the ladder up and climbed up there and pushed one of the ceiling tiles up and slid it over. I had a little plastic flashlight, one of those little two cell battery lights. I stuck my head up through the ceiling and shined the light. I was just fixing to start down, and I felt the ladder move. I thought oh Lord this is going to be bad. I reached to try to put my hand on top of it where I could get down. It was just like that made it get faster. And then I remember it slamming me back against the wall. And then when I hit the floor, I don't know how long I was out. But when I come to Jessica was still standing there holding the door open.

[Doc. 17-2 at pp. 9-10] In describing his actions on the ladder, Mr. Walker further testified that he "just shined the flashlight [into the area where he had removed the ceiling tile]. I just turned my head. I didn't move." [Id. at p. 11] After the incident, the instant product liability suit followed.

After filing suit, the plaintiffs retained the services of Mr. Kiska, an engineer with more than twenty years experience in the testing and development of ladders. [Doc. 23-2 at ¶1] Mr. Kiska's expert testimony focuses on his application of a test Mr. Kiska refers to as the "Induced Walking" test. [Id. at ¶7] Mr. Kiska developed the Induced Walking test based on the American National Standards Institute's ("ANSI") Racking test. [Id.] The ANSI Racking test measures "a ladder's

2

resistance to twisting under an uneven loading." [Id.] The Induced Walking test is similar to the ANSI Racking test, but has been modified, according to Mr. Kiska, to more closely simulate the actual ladder use conditions. [Id.]

Mr. Kiska has prepared three expert reports in this matter. [Doc. 23-2] Mr. Kiska's first report, dated October 17, 2008, describes Mr. Kiska's initial testing and opinions. [Id. at pp. 11-23] The second report, dated October 24, 2008, corrects certain typographical errors included in the October 17 report. [Id. at pp. 24-25] The third report, dated December 3, 2008, provides additional test results obtained using a revised version of the Induced Walking test. [Id. at pp. 26-27] The protocol for the October 17 version of the Induced Walking test is described as follows:

1. Ladder is opened and locked, placed upon a smooth, level cement floor with all feet firmly supported.
2. A 200-lb. dead load is applied to the 4th step from the bottom of the ladder.[1]
3. A sideward lateral pulling force is gradually applied to one front rail at the level of the 4th step, parallel with the floor.
4. The force is applied until the opposite side legs are off of the ground and the opposite side of the ladder has stopped shifting forward.
5. The force is then slowly released, and the condition of the ladder is observed, noting specifically if any of the legs remain off of the floor.
6. The gap under any unsupported leg is then measured.

[Id. at p. 14] The protocol for the December 3 version of the Induced Walking test is described as follows:

1. Ladder was opened and locked, placed upon a smooth, level cement floor with all feet firmly supported.

---

[1]During the hearing, Mr. Kiska explained that the load was applied by hanging weights from the outer edge of the step rather than by placing the weights directly on the step.

3

> 2. Four 25-lb. steel plates (used as a dead load) were placed upon the [sic] centered on the highest allowable standing level (4th from ground level).
> 3. A sideward lateral pulling force is gradually applied to one front rail at the highest allowable standing level, parallel with the floor, perpendicularly to the front section of the ladder.
> 4. The lateral pulling force was applied until the feet of the opposite side rails were slightly off of the ground and there was no long [sic] any forward movement of those legs (i.e. a condition of equilibrium was reached).
> 5. The force was then slowly released, and the condition of the ladder observed, noting specifically if any of the legs remain off of the floor.
> 6. The gap under any unsupported leg was then noted.

[Id. at p. 26]

During the hearing, Mr. Kiska testified that the primary difference between the Induced Walking test and the ANSI Racking test is that in the Induced Walking test, all of the ladder's feet are placed on the ground and are not clamped or restrained. In the ANSI Racking test, two of the legs of the ladder are suspended off of the ground and the other two legs are clamped in place. Mr. Kiska further testified that the tests differed in that: the ANSI Racking test makes use of a four pound pre-load before applying a six pound lateral force, while the Induced Walking test forgoes the pre-load; the ANSI test placed weights on the first step of the ladder, while the Induced Walking test placed weights on the fourth step; and that the placement of lateral force differed.

**II.     Applicable Law**

Defendant's motion challenges the admissibility of Mr. Kiska's testimony under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

4

> training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability

in a given case. Id. at 153. The party proffering the expert testimony bears the burden of showing its admissibility under Rule 702 by a preponderance of the evidence. Daubert, 509 U.S. at 592 n. 10. With this framework in mind, the Court will now address Defendant's motion.

**III.     Analysis**

In this instance, the defendant does not challenge Mr. Kiska's qualifications and experience, but instead focuses solely on Mr. Kiska's methodology and the application of that methodology to the facts at issue, thus the Court need not address the initial qualification hurdle and instead proceeds directly to Mr. Kiska's methodology. After considering the evidence of record, the filings, and the argument of counsel, the Court finds that the methodology employed by Mr. Kiska in conjunction with his Induced Walking test does not satisfy any of the Daubert factors, nor any other factors that would assure the Court of the reliability necessary to satisfy the Court's gatekeeping function.

**A.     Induced Walking Test**

The first Daubert factor, whether the scientific knowledge can or has been tested, weighs against Mr. Kiska's methodology because there is no evidence that Mr. Kiska has fully tested his theory to the point where it can be considered reliable. No evidence was offered that it has been tested by anyone other than Mr. Kiska. Rather, it appears to the Court that the Induced Walking test is still in a state of experimental flux, even as to Mr. Kiska's own application and methodology, as shown by the changes in his own testing protocol between the October 17 report and the December 3 report. Furthermore, those changes were made solely to get more consistent results. There was no evidence they produced better or more accurate results.

During the hearing, plaintiff's counsel indicated that it would only seek to introduce the testing results from the December 3 report, not the October 17 report, implying a disavowal of the

October 17 results and protocol. This implied disavowal was further strengthened by Mr. Kiska's testimony that he changed the testing protocol because of problems in applying the initial protocol to light weight ladders such as the one in question. This is significant, because he testified that the October 17 testing methodology (200 lbs. hanging from the fourth step) was the Induced Walking test he developed. The new methodology (100 lbs. directly on the fourth step) is apparently some newly developed revision/version/derivative of his actual test. He admitted he had no data where he had applied the new version previously or subsequently. While the Court certainly appreciates Mr. Kiska's efforts to apparently improve his test, and to acknowledge problems with his prior testing methodology, there is no evidence that the revised methodology used in the December 3 protocol is any more, or less, reliable than that used in the October 17 protocol other than it provides more consistent results. While he contends that his test is better than the ANSI test method, there is no evidence that the Induced Walking test is as reliable, let alone more reliable, than the ANSI tests already in use in the industry. In the absence of any evidence of testing and without significant additional testing to confirm that Mr. Kiska's "new" Induced Walking test is reliable, the Court simply cannot find the test reliable.

The second Daubert factor, whether the given theory or technique has been published or been the subject of peer review, also weighs against admission. Mr. Kiska testified at the hearing that he has not sought to publish his Induced Walking test, nor has the test been subjected to peer review, nor examined by any other experts in this field. Mr. Kiska further testified that he did not know of any other experts who used the Induced Walking test. The Court finds the lack of peer review especially troubling, given that Mr. Kiska currently chairs an ANSI committee regarding a specific standard for step-stools. While the Court understands that Mr. Kiska is not on the committee

relating to the type of ladder in question or the type of standard in question, it is clear to the Court that Mr. Kiska has considerable experience in the ladder industry, has familiarity with the ANSI standards, has connections with peers in the relevant field, and is associated with the organization tasked with adopting the type of test at issue. Mr. Kiska testified that he was familiar with the process of developing tests for ladders for adoption by ANSI and had sone so in the past. Mr. Kiska indicated that he has also submitted tests for step-stools to sub-committees. Mr. Kiska admitted he had not presented his Induced Walking test to any committees, sub-committees or working groups, nor submitted it to any publication. Mr. Kiska's failure to even attempt to seek the comments of his peers, given his connection to ANSI and his position as a committee chair, calls into question the reliability of his methodology.

The third Daubert factor, whether a known error rate exists, also weighs against admission. There is no evidence before the Court as to the error rate of the Induced Walking test. In the absence of such data, the Court is especially troubled here by the very small data set generated by Mr. Kiska in forming in his opinion. During the hearing, Mr. Kiska testified that while he used the measurements from his first test, he performed the test approximately three to five times for each type of ladder when conducting the December testing, and approximately two to three times for the October testing. However, Mr. Kiska further testified that he did not record the results of those other tests, but instead stated the first test results was "representative" of the other results. Given that the Induced Walking test has not been subjected to peer review, has not been published, is still in a state of flux, and, as the Court discusses below, has not been accepted in the field, the Court finds that there is simply insufficient evidence before the Court as to the accuracy of the test. Without some

8

evidence as to the error rate of the Induced Walking test,[2] there is no guarantee that the small and unrecorded data set generated in this matter would accurately measure results of his own test. The Court has no such guarantee, further weighing against a finding of admissibility.

The fourth Daubert factor, whether the theory enjoys general acceptance in the particular field, also weighs against admissibility. During the hearing, Mr. Kiska testified that the Induced Walking test is not used or accepted by anyone else in the field. Thus, this factor also weighs against the admissibility of Mr. Kiska's opinions.

In applying this analysis, the Court recognizes that the Daubert factors are not an exhaustive list, but instead serve as guidelines to aid the Court in determining admissibility. However, after considering the issue, the Court finds that Mr. Kiska's methodology fails all of the Daubert factors, and further finds that no other guarantee of reliability has been provided by the plaintiff in the absence of the Daubert factors. In the end, the Court is faced with only Mr. Kiska's assurance that his test is reliable. Such a self-serving guarantee is insufficient to pass Daubert muster.

The Court also has great concerns regarding the relevance of this testing. Even if the methodology was reliable, it would at best indicate that under the such testing, a "vertical gap" between the surface the ladder was placed on and a leg of the ladder can occur. Whether this translates into a defective or unreasonably dangerous condition is left to speculation. Although Mr. Kiska claims a "vertical gap" of greater than a half of an inch constitutes a "dangerous propensity"

---

[2]Here the Court refers to the "revised" Induced Walking test, in as much as the original Induced Walking test, per Mr. Kiska's testimony, produced inconsistent results, indicating an unacceptable error rate in measurements. The fact that Mr. Kiska changed the amount of weight and its placement from his original Induced Walking test indicates not only the lack of reliability of the earlier Induced Walking test, but also the lack of assurance of any reliability in the newly revised test.

to "walk," he offers no scientific support or basis for this subjective conclusion. Mr. Kiska concedes that he has no threshold level of what is reasonably safe and has no data to support his conclusion. His subjective belief that there is some correlation between the "vertical gap" and the ladder's tendency to "walk" or to become unsafe is nothing more than that, a subjective belief.

The Court also notes that at least one other court has rejected the Induced Walking test, and for similar reasons. Ray v. Werner Ladder, Inc., No. 07-0673-CV-W-ODS, 2008 U.S. Dist. LEXIS 88864, at *6-7 (W.D. Mo. Nov. 3, 2008). Specifically, the Ray court held that:

> Plaintiff argues Kiska's induced walking test is admissible because it is based on and derived from the standard racking test used in the industry. This argument misses the mark because the issue is whether the test Kiska used is reliable -- and nothing in the record permits the Court to conclude that it is. Kiska has changed at least one aspect of the standard test -- the placement of the weight -- because he believes it provides a better indication of a ladder's relative tendency to move. His belief does not make it so, and there is nothing in the record to indicate Kiska is correct. Similarly, he finds meaning in the vertical distance the ladder's leg(s) rise, while the standard test does not - and nothing in the record demonstrates the meaning he derives is of any value.
>
> The induced walking test has not been peer-reviewed, utilized by other experts, or accepted in the field. These are important factors when discussing engineering principles, particularly those designed to divine meaning from measurements that can be made for every product of a given type. Different results may be had by placing the weight higher on the ladder, but how does the Court (or the jury) know those differences are important? Different ladders may rise a greater distance than others, but what do those differences mean? Absent some indication beyond Kiska's unilateral belief that the induced walking test produces meaningful and reliable information, his testimony based on that test may not be admitted.

Id. The Court agrees with the Ray court's analysis and adopts the same herein as a further basis for the Court's opinion.

10

The plaintiffs argue that if the Court were to reject Mr. Kiska's test, then the ladder industry would, in effect, be allowed to insulate itself from any liability by establishing the industry norms against which it would be judged. The Court does not believe that its ruling here leads to that result. Rather, the Court finds that the Induced Walking test is still in the development phase (and has even been revised during the course of this case), and as such, lacks the guarantees of reliability necessary to withstand <u>Daubert</u> analysis. Mr. Kiska testified at the hearing that he had been involved in the development of several ANSI standards. Thus, if the Induced Walking test is a valid form of measurement of the risk of injury to a ladder user, then Mr. Kiska should seek out comment from his peers to confirm that, and perform the additional testing necessary to fully develop his theory, as he has done with the other standards he has helped develop in the past. However, in the absence of such assurances, the Court simply cannot accept Mr. Kiska's word that the ANSI tests are invalid and that his test is better. If all that were required to pass <u>Daubert</u> was the assurance of the expert that his methodology was reliable, then the Court's gatekeeping function would effectively be eliminated and abdicated to the expert. That is clearly not <u>Daubert</u>'s goal.

After the hearing, the plaintiffs submitted a supplemental response, arguing that the defendant's experts generally agreed with the "basic premise" of Mr. Kiska's Induced Walking test. [Doc. 48] Upon reviewing the testimony provided, the Court does not agree with that characterization. Furthermore, to the extent the plaintiffs imply that the defendant's experts "agreed" with certain results generated by the Induced Walking test, it would not change the Court's opinion. Specifically, the plaintiffs argue that the defendant's experts agreed that if one of the legs of a ladder similar to the one at issue were to lift off the ground by approximately one inch, that could create the beginning of a tip over. The full context of the experts' testimony is not shown,

11

nor are their answers that specific. However, even if the defendant's experts gave such testimony, that does not change the Court's analysis. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995) The premise that a one inch gap between the leg of a ladder and the supporting surface creates an unstable, dangerous condition is a result of Mr. Kiska's use of the Induced Walking test. Though others may agree with some of the results generated by that test, the Court cannot look to the results alone to satisfy Daubert. Tests can be designed to generate specific results, thus one must examine the testing methodology to ensure reliability, not merely look to the results to see if they seem reasonable.[3] Thus, after considering the plaintiffs' supplemental response, the Court still finds that the Induced Walking test does not satisfy Daubert.

Accordingly, the Court finds that Mr. Kiska's methodology does not satisfy the reliability requirements of Daubert, and further finds that Mr. Kiska should not be allowed to offer expert testimony based upon that methodology. Having addressing the Induced Walking test, the Court turns next to the video demonstration offered by the plaintiffs.

**B.     Video Demonstration**

The defendant also seeks to exclude the video demonstration prepared by Mr. Kiska for use by the plaintiffs at trial. The plaintiffs have prepared a video demonstration containing four segments, with the first segment running from time stamp 0:00 through approximately 1:18, the second running from 1:18 to 2:06, the third running from 2:15 to approximately 3:20, and the fourth

---

[3]Which is not to say that the Court believes that the Induced Walking test was so designed, nor does the Court make a finding on that issue. Nor does the Court make a finding as to the reasonableness of Mr. Kiska's test results.

12

running from 3:20 to 4:09. [Doc. 23, Exhibit G] All four segments depict Mr. Kiska climbing a ladder and then show the ladder shifting and becoming unstable. The first and third segment depict the same climbing demonstration, with the only difference being that the third segment includes a picture-in-picture close-up view of the feet of the ladder, as well as the full view of the ladder climbing demonstration. Similarly, the second and fourth segments are the same, with the fourth segment also containing a picture-in-picture close-up of the feet of the ladder. During the hearing, plaintiff's counsel agreed to limit the video demonstration to the first and third segments, voluntarily excluding the second and fourth segments.

After reviewing the video, and after considering the filings, the arguments of counsel, and the evidence of record, the Court finds that the video is also inadmissible. To the extent that the video is meant to serve as a visual demonstration of the Induced Walking test, in light of the failure under Daubert of that test, then the video must also be excluded. To the extent that the video is offered as a demonstration of what occurred when Mr. Walker fell, there is, at this time, no evidentiary foundation for the movements made by Mr. Kiska while standing on the ladder in recreating the event. Mr. Kiska conceded that Mr. Walker's deposition testimony did not correlate with the movements Mr. Kiska made while on the ladder in the video. Mr. Kiska also stated that the video was not intended to show how the incident happened, but rather how it could have happened. However, experimental or demonstrative evidence, such as the video in question, generally must share some factual relationship to the event sought to be demonstrated. See Persian Galleries, Inc. v. Transcontinental Ins. Co., 38 F.3d 253 (6th Cir. 1994) ("The admissibility of experimental evidence depends upon its relevance and probativity. Experimental evidence is probative 'if the conditions of the experiment were identical with or similar to the conditions of the

13

transaction in litigation.'"); see also Keller v. United States, 38 F.3d 16, 32 n.10 (1st Cir. 1994) (noting that mock-up of ladder excludable due to failure to lay foundation) (citing United States v. Myers, 972 F.2d 1566, 1579 (11th Cir. 1992), cert denied, 507 U.S. 1017 (1993), for rule that admissibility turns on whether there is foundation testimony that demonstrative evidence is a "fair" and "accurate" depiction of original); Sanchez v. Denver & Rio Grande Western Railroad Co., 538 F.2d 304, 306 n.1 (10th Cir. 1976) (noting that party must lay foundation of accuracy and fairness for motion picture exhibit). Should the proper foundation be established at trial, the admissibility of the video as a recreation of the accident (but not in support of the Induced Walking test) would necessarily be left to the trial judge's discretion.

**IV.     Conclusion**

For the reasons set forth more fully above, the defendant's motion [Doc. 16] is hereby **GRANTED**. The plaintiff's proposed expert, Stanley Kiska, shall not be allowed to offer expert testimony in this matter. Additionally, to the extent that the plaintiff seeks to introduce the video demonstration in support of the Induced Walking test, the video is also excluded. To the extent that the plaintiff seeks to introduce the video demonstration (limited to the segments noted above) as a recreation of the accident, the Court finds that it currently lacks a proper evidentiary foundation, and admissibility at trial is necessarily contingent upon the proper foundation being laid at trial.

**IT IS SO ORDERED.**

                                                 **ENTER:**

                                                      s/ C. Clifford Shirley, Jr.
                                                 United States Magistrate Judge